UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STEPHEN DAWSON,
NEIL WILLIAMS,
ROBERT FISHER,
MICHAEL MOTTO,

          Plaintiffs,

v.                                         Civil Action No. 2:08-0964

KATHERYN TOLER,
Lead Teacher, West Virginia
Department of Education at
Mount Olive Correctional Complex
(In her individual capacity),

          Defendants.


MEMORANDUM OPINION AND ORDER


          This action was previously referred to Mary E. Stanley,

United States Magistrate Judge, who submitted her Proposed

Findings and Recommendation ("PFR") pursuant to 28 U.S.C. §

636(b)(1)(B) on August 13, 2008.

          The magistrate judge recommends that the plaintiffs'

complaint be dismissed pursuant to 28 U.S.C. § 1915A for failure

to state a claim upon which relief can be granted.  The

magistrate judge further recommends that plaintiffs' Application

to Proceed without Prepayment of Fees and Costs be denied.

1

Plaintiffs filed objections to the magistrate judge's proposed disposition on August 19, 2008.  The court has reviewed the plaintiffs' objections and finds them to lack merit.

Defendant, Katheryn Toler, works as the lead teacher at the Mount Olive Correctional Complex ("Mount Olive") where the plaintiffs are incarcerated.  Each plaintiff was employed at Mount Olive as a teaching assistant prior to Mrs. Toler's decision to end their employment.  Plaintiffs contend they were wrongfully terminated, and seek damages at law as well as equitable relief.

The magistrate judge determined that because plaintiffs, as prisoners, have no constitutionally protected right to any particular work assignment, their claims under 42 U.S.C. § 1983 for denial of procedural due process fail as a matter of law.  (PFR at 4).  Plaintiffs do not attack this reasoning, (Obj. at 8), and it is indeed sound.  See Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) ("the classification and work assignments of prisoners . . . are matters of prison administration, within the discretion of the prison administrators."), cert. denied, 435 U.S. 1009 (1978); Blugar v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995)

2

("courts of appeals consistently have held that an inmate's
expectation of keeping a specific prison job, or any job, does
not implicate a protected property interest.").

Plaintiffs do, however, object to the magistrate
judge's construction of the complaint.  According to the
plaintiffs, their claims are for unlawful retaliation, not denial
of procedural due process.  In support of their retaliation
claims, plaintiffs contend that they were fired by Mrs. Toler
because they exercised their First Amendment right to freedom of
speech.  (Obj. at 7).[1]

While incarceration does not divest prisoners of all
constitutional protections, "the constitutional rights that
prisoners possess are more limited in scope than the
constitutional rights held by individuals in society at large."
Shaw v. Murphy, 532 U.S. 223, 229 (2001).  In the free speech
context, "a prison inmate retains those *First Amendment* rights
that are not inconsistent with his status as a prisoner or with
the legitimate penological objectives of the corrective system."
Pell v. Procunier, 417 U.S. 817, 822 (1974).  The First Amendment

---

[1] Plaintiffs also state that their Sixth, Eighth and
Fourteenth Amendment rights have been violated.  (Obj. at 2).
These claims are unsupported by argument and devoid of merit.

3

right to freedom of speech "includes not only the affirmative
right to free speech, but also the right to be free from
retaliation by a public official for the exercise of that right."
Suarez Corp. Indus. v. Tinder, 202 F.3d 676, 685 (4th Cir. 2000).

      To establish a First Amendment freedom of speech
retaliation claim under § 1983, the plaintiff must prove three
elements:

> First, the plaintiff must demonstrate that his or her
> speech was protected.  Second, the plaintiff must
> demonstrate that the defendant's alleged retaliatory
> action adversely affected the plaintiff's
> constitutionally protected speech.  Third, the
> plaintiff must demonstrate that a causal relationship
> exists between its speech and the defendant's
> retaliatory action.

Id. at 686 (internal citation omitted).  The plaintiffs' claims
fail because their speech was not protected by the First
Amendment.

      Prior to the plaintiffs being fired, their was a rumor
at Mount Olive that Mrs. Toler was involved in an "illicit
affair" with an inmate.  (Obj. at 8).  Plaintiffs contend that
they were retaliated against by Mrs. Toler because she believed
they perpetuated the rumor.  In the plaintiffs' words, "[t]he
Plaintiffs have described the violation of their Constitutional
rights in their supplying information reflecting retaliation due

4

to the exercise of rumored freedom of speech."  (Id. at 7).
While the free speech rights of prisoners have not been neatly
defined, it is clear that rumors regarding prison staff do not
constitute protected speech.

        The Sixth, Seventh and Eighth Circuits have analogized
the scope of protected speech in the prisoner context to that of
public employees.  See McElroy v. Lopac, 403 F.3d 855, 858 (7th
Cir. 2005) ("As in the public-employee context, McElroy's
questions concerning Lopac's 'personal policies' about lay-in pay
must relate to a public concern and not just a personal matter to
receive *First Amendment* protection."); Sasnett v. Litscher, 197
F.3d 290, 292 (7th Cir. 1999) ("we think their free-speech claim
fails by analogy to the *Pickering* line of cases that distinguish
between speech on matters of public concern and on private
matters.") (citing Pickering v. Board of Education, 391 U.S. 563,
571-72 (1968) (regarding free speech right of public employees));
Thaddeus-X v. Blatter, 175 F.3d 378, 392 (6th Cir. 1999) ("A
prisoner's *First Amendment* rights are not more extensive than
those of a government employee; in fact, under most clauses of
the *First Amendment*, they are much more strictly limited.");
Cornell v. Woods, 69 F.3d 1383, 1388 (8th Cir. 1995) (noting that
"[e]ven public employees, who receive only limited *First*

5

*Amendment* protections in the employment context, are constitutionally shielded for employer retaliation for their participation in investigations concerning matters of public concern.").

In the public-employee context, only speech pertaining to matters of public concern is protected.  See <u>Love-Lane v. Martin</u>, 355 F.3d 766, 776 (4th Cir. 2004) ("The government may not retaliate against a public employee who exercises her *First Amendment* right to speak out on a matter of public concern."). "A statement that involves private interests of any kind, and that is otherwise devoid of public concern, in not entitled to protection."  <u>Arvinger v. Mayor & City Counsel of Baltimore</u>, 862 F.2d 75, 79 (4th Cir. 1988).  In determining whether speech is of public concern, courts look to "the content, form and context of the speech in question."  <u>Robinson v. Balog</u>, 160 F.3d 183, 188 (4th Cir. 1998).

The rumor about Mrs. Toler is unlike the "complaints about the use of shackles in group therapy and the denial of yard time" found to constitute protected speech in <u>Pearson v. Welborn</u>, 471 F.3d 732, 740 (7th Cir. 2006).  Nor is the rumor akin to a "matter of political, social, or other concern to the community" deemed to be of public concern in the public-employee context.

<u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983).  Indeed, the rumor was so inconsequential that in a letter to the deputy warden plaintiff Neil Williams stated that, "[i]t was later discovered that the rationale Mrs. Toler had given was that someone had spread a rumor about something.  All attempts at nailing down the rumor and who had said it or if it had ever been said were unsuccessful."  (Compl. at 12-13).

In the public-employee context courts have cautioned that, "government offices could not function if every employment decision became a constitutional matter."  <u>Balog</u>, 160 F.3d at 187 (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 143 (1983)).  This warning is all the more pertinent in the prison context; if rumors such as the one about Mrs. Toler were to be afforded First Amendment protection, the ability of prison administrators to discharge their duties would be severely inhibited.  Further, stifling the spread of rumors such as the one about Mrs. Toler is a legitimate penological objective inasmuch as such rumors have the potential to undermine the authority of prison staff.  <u>See</u> <u>Pell</u>, 417 U.S. at 822.  Thus, the rumor about Mrs. Toller was not protected speech.

Plaintiff Williams, who worked as a culinary arts teaching assistant, contends that he was retaliated against for

7

yet another exercise of free speech. According to the complaint, a graduation ceremony for prisoners participating in educational programs at Mount Olive was scheduled to be held on October 4, 2007. (Compl. at 5). Williams avers that following an April 3, 2007 practice for the graduation ceremony he overheard several prisoners due to graduate from the culinary arts program complaining that Mrs. Toler had not announced the name of the culinary arts teacher "when going through the introduction of the teachers." (Id.) According to Williams, the prisoners "also complained that Culinary Arts was not clearly represented within the programs to be given out at Graduation." (Id.). After overhearing these complaints, Williams allegedly "approached Mrs. Toler and informed her of what . . . [he] had heard." (Id. at 6). In response, Mrs. Toler told Williams that "she would consider the complaint." (Id.)

After the graduation ceremony took place as scheduled on October 4, 2007, it was discovered that an inmate named Rusty Phillips had attempted to organize a boycott of the graduation. (Id. at 7). While Williams says he had nothing to do with the attempted boycott, on October 5, 2007 he was summoned to Mrs. Toler's office where he was handed an "Inmate Work Counseling/Suspension Form." (Id. at 6). The form, which

8

according to the complaint was signed by Mrs. Toler, notified

Williams that he would be suspended as a teaching assistant for

the period of October 5 through November 1, 2007.  (Id.)  The

reasons for Williams' suspension were set forth as follows:

> **The above named inmate was counseled and advised of the**
> **following:** Mr. Williams has been cautioned in the past
> about creating disturbances with comments and
> interfering in Dept. [o]f Education processes,
> spreading rumors, sharing info outside of his assigned
> area.
> **The above named inmate is suspended from his present**
> **work assignment due to:** creating a disturbance about
> what he felt were slights during graduation practice,
> resulting in 20+ students threatening to boycott
> graduation.

(Id.)  On October 11, 2007, Williams filed a grievance with

prison official Janet Payne for "Unjustified Suspension from

Culinary Arts (Education) based on rumor, conjecture, and

personal beliefs not grounded in fact.  Slander."  (Id. at 7).

Through the grievance, Williams requested his suspension be

lifted, back pay and, because the culinary arts program had been

closed, reassignment to "another work area such as [w]elding."

(Id. at 9).  Ms. Payne's October 18, 2007 response to the

grievance states:

> I spoke with education.  You were suspended by Ms[.]
> Toler on 05 October 2007 with justification.  Due to
> Culinary Arts program closing once your suspension
> [sic], you will now be terminated.  You will not be
> transferred to another department.  You may apply and
> interview for another TA position.

(<u>Id.</u> at 9).

Williams contends that Mrs. Toler suspended him, and then ended his employment as a teaching assistant because he brought the dissatisfaction of the culinary arts students to her attention.  This, according to Williams, was an unlawful act of retaliation, in derogation of his First Amendment right to freedom of speech.  (Obj. at 7).

Although Williams does not assert that he was retaliated against for filing a grievance, the court in its analysis of the merits of Willaims' claim notes that under certain circumstances, the filing of an official grievance is protected speech under the First Amendment.  <u>See</u> <u>Farrow v. West</u>, 320 F.3d 1235, 1249 (11th Cir. 2003) ("A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment.") (internal quotation marks omitted); <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003) ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the *First Amendment*."); <u>cf.</u> <u>Friedl v. City of New York</u>, 210 F.3d 79, 87 (2d Cir. 2000) ("The 'public concern' requirement, developed in the context of

10

public employee speech, has no place in the context of prisoner petitions for redress of grievances, which typically address matters of personal concern."). Courts have also, at times, found complaints lodged by inmates outside the formal grievance process to fall within the purview of the First Amendment. See Pearson, 471 F.3d at 740-41 (oral complaint about prison conditions protected); Wolfel v. Bates, 707 F.2d 932, 933-34 (6th Cir. 1983) (petition signed by numerous inmates and sent to warden protected).

William's statement to Mrs. Toler was not the type of informal complaint subject to the protection of the First Amendment. At most, Williams' statement was of interest to the seventeen graduates of the culinary arts program. (Compl. at 5). The petition in Wolfel alleged that "prison guards were harassing the inmates of the Southern Ohio Correctional Facility by starting showers and 'walklines' between 5:30 and 6:00 a.m." 707 F.2d at 933. The inmate in Pearson complained "about the use of shackles in group therapy and the denial of yard time," which the court found to be "related to matters of concern to all J-pod prisoners." 471 F.3d at 740. These complaints, unlike Williams' statement to Mrs. Toler, concerned conditions of confinement of concern to all, or a great number of inmates. Williams' job-

11

related complaint - if it can be called that - was not a matter
of general prison concern and was thus not protected speech.  See
McElroy, 403 F.3d at 858 (job related complaints "were not
protected speech as would be necessary to satisfy a retaliation
claim's requirement of protected activity.").  Indeed, it makes
sense that informal job related complaints do not constitute
protected speech because, as noted above, prisoners have no
constitutional right to any particular job.  If Williams'
statement was deemed to be protected speech, there would be
little speech left unprotected and, in turn, the "legitimate
penological objectives" of the Mount Olive Correctional Complex
would be severely disrupted.  See Pell, 417 U.S. at 822.

        Because the plaintiffs' speech was not protected, their
claims do not implicate a constitutional right.  The Fourth
Circuit has held that,

> Legally frivolous claims are based on an
> "indisputably meritless legal theory" and include
> "claims of infringement of a legal interest which
> clearly does not exist." Neitzke, 490 U.S. at 327. It
> follows that claims of retaliatory actions are legally
> frivolous unless the complaint implicates some right
> that exists under the Constitution. That is, plaintiffs
> must allege either that the retaliatory act was taken
> in response to the exercise of a constitutionally
> protected right or that the act itself violated such a
> right. A claim of retaliation that fails to implicate
> any constitutional right "lacks even an arguable basis
> in law," id. at 328, and is properly subject to
> dismissal under § 1915(d).

12

Adams, 40 F.3d at 75 (quoting Neitzke v. Williams, 490 U.S. 319

(1989)).  Inasmuch as plaintiffs' objections are not meritorious,

the court, following de novo review, concludes that the

disposition recommended by the magistrate judge is correct.  The

magistrate judge's PFR is adopted and deemed incorporated herein

in its entirety.

        Based upon the foregoing, the court ORDERS that the

action be, and it hereby is, dismissed.

        The Clerk is directed to forward copies of this

memorandum opinion and order to counsel of record, the pro se

plaintiffs and the United States Magistrate Judge.

                    DATED: August 14, 2009

                    John T. Copenhaver, Jr.
                    United States District Judge

13